## THE MUREN COAL AND ICE COMPANY

*v.*

### HERBERT HOWELL, Admr.

*Opinion filed October 24, 1905.*

1. LIMITATIONS—*when amended count does not state new cause of action.* An averment in an original declaration that it was the practice of the defendant coal company to keep a space clear on both sides of its track at the place of injury fairly includes the averment of the amended count that it was defendant's practice to keep *one side* clear, the cause of action in both counts being the failure of defendant to keep its entry and tracks free from obstructions.

2. APPEALS AND ERRORS—*when question cannot be raised on a second appeal.* All questions which were presented by the record upon first appeal but which were not then cognizable because not raised by a proper assignment of error are deemed waived, and will not be considered upon second appeal though covered by the new assignments of error.

3. EVIDENCE—*when statement is part of the res gestæ.* A statement by an injured man as to the manner in which his injury occurred, made to the witness, who was about twelve feet away when the injury occurred and who ran to the injured man immediately and heard the statement, is admissible as part of the *res gestæ.*

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

WISE & McNULTY, for appellant.

WEBB & WEBB, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case commenced by the appellee in the circuit court of St. Clair county, against the appellant, to recover damages for the death of his intestate, August Schmidt, alleged to have been caused by the negligence of the appellant.

The declaration upon which the case was tried contained two counts. The first count charged "that August Schmidt was in the employ of the defendant as a coal driver, his duties requiring him to haul empty coal cars from the bottom and distribute them throughout the coal mine wherever needed, and to pull loaded coal cars from the entries and rooms to the bottom of the shaft so that they might be hoisted; that there were, prior to said date, a large number of entries and rooms in said coal mine, with laid tracks for the transportation of coal; that it was the practice of defendant, and consistent with good mining, to clear away and remove slate, clod and other substances from both sides of the track therein for a sufficient distance to allow drivers hauling coal over said railway to pass around the sides of coal cars on said railway tracks, wherever there was room between the sides of said railway tracks and the sides of the entry, without coming in contact with slate, dirt, etc., thereby endangering such drivers while in the discharge of their duties in said coal mine; that said drivers had knowledge of said practice, relied on it and expected the defendant to keep and maintain the said railway tracks free and clear of obstructions; that on the 28th day of March, 1900, a large lot of slate, clod, dirt, etc., fell from the roof of the eighth west entry leading off the main south entry in said mine on the railway track at a point where there was ample room between said railway track and the rib side of said entry to allow the drivers to pass between said coal cars on said railway track and the rib side of said entry, and obstructed all that portion of said entry lying between said railway track and the rib side of said entry, so as to prevent drivers hauling coal therein from passing around coal cars on said side of said railway track, which rendered said railway track unsafe and dangerous to drivers hauling coal through said entries over said railway track; that defendant had notice of the fall of said slate and that the same was an obstruction to that part of the said entry and the said railway track, and

would prevent drivers passing through said entry from passing around coal cars on said track at that point on that side of said entry, and that it rendered said entry unsafe and dangerous; that defendant failed to remove said obstructions and abate said dangerous conditions, but negligently permitted the same to remain there until said August Schmidt was injured, well knowing said obstructions rendered said entry unsafe and dangerous; that August Schmidt on said date was hauling two loaded coal cars along said railway track to said entry, exercising due care, and without notice or knowledge that said slate, etc., had fallen from the roof of said entry or that said entry was obstructed, and that when he reached said obstructions he discovered a coal car on said railway track immediately in front of him, and seeing that a collision between said cars he was hauling and said car standing on said railway track was inevitable and that he would be likely to be injured, attempted to escape said collision and injury by trying to get off said railway track on the side so obstructed, but came in contact with the slate and other obstructions which had fallen from the roof, and which prevented said August Schmidt from escaping in that direction and threw him back on the railway track between said cars and allowed said cars to crush him, from the effects of which he afterwards died."

The second count was in the following form: "That the defendant was the owner of a coal mine and operating it; that there were a large number of railway tracks in certain entries, cross-cuts and rooms, used by the defendant in transporting coal by means of draught animals and coal cars in charge of a driver; that it was the duty of the defendant to keep said roadways and railway tracks over which the driver was compelled to pass in a reasonably safe condition and free from obstructions; that the defendant negligently allowed and permitted a coal car to stand on a certain railway track and a large amount of coal, slate, etc., to remain on the side of said railway track near said standing car, ob-

structing the same and making it dangerous and unsafe for the driver to pass there while in the discharge of his duties; that on the 28th day of March, 1900, one August Schmidt was in the employ of the defendant as a driver in charge of a mule and box-cars in said coal mine, his duties being to drive said mule and cars over said railway track, and while he was hauling two loaded cars along said railway track in said mine near said obstruction, in the discharge of his duty and in the exercise of due care, and without notice of said obstructions near said standing car, said two cars being hauled collided with said standing car, catching him between said two cars and said standing car, crushing and injuring him so that he died from his injuries; that upon seeing said standing car said August Schmidt undertook to escape said collision by going from said railway track on the side thereof that was so obstructed, and was thereby prevented and thrown back upon said railway track and between said cars by reason of said obstructions, and was killed."

The defendant filed the general issue, a plea of the Statute of Limitations and a plea of former acquittal as to the second count. A demurrer was sustained as to the plea of the Statute of Limitations and a replication was filed to the plea of former acquittal. The case was tried before the court and a jury, and resulted in a verdict and judgment in favor of the plaintiff for the sum of $5000, which was reversed by this court on the ground that the court misdirected the jury as to the law, and the cause was remanded for a new trial. (*Muren Coal and Ice Co.* v. *Howell,* 204 Ill. 515.) Upon the case being re-instated in the trial court, the defendant so amended its plea of the Statute of Limitations that it applied to the first count of the declaration only, and the court again sustained a demurrer thereto, and upon a trial the plaintiff recovered a judgment for $3500 upon the first count of the declaration, which has been affirmed by the Appellate Court for the Fourth District, and a further appeal has been prosecuted to this court.

It is first contended by the appellant that the court erred in sustaining a demurrer to the plea of the Statute of Limitations to the first count of the declaration. The injury occurred on the 28th day of March, 1900, and several declarations have been filed in the case, one of which was filed on February 3, 1902, which was within two years of the date of the injury. In the first count of that declaration it was averred "that it was the custom of the defendant, in constructing its railway track, to place said track near the side of said entries known as the rib side, and a sufficient distance from the walls thereof to enable servants of defendant passing or working in such entries to pass between the sides of coal cars hauled on said railway tracks and the rib side of said entries without danger of injury, and keep the space between the railway track and the rib side in said entry free and clear of slate, coal and other obstructions; that the defendant always did this, as hereinafter stated, and the servants of defendant, having knowledge of such practice, relied on the defendant to keep said entries free and clear as aforesaid; that on the 28th day of March, 1900, a lot of slate, coal, etc., fell from the roof of the eighth west entry leading off of the main south entry in said coal mine, and obstructed all that portion of said entry lying between the railway track and the rib side of said entry, and rendered unsafe and dangerous the said railway track to said August Schmidt, working in said entry; that the defendant had notice of the fall of said slate, coal, etc., from the roof of said entry, and that it was an obstruction to that part of the entry and rendered it dangerous and unsafe, and defendant negligently and carelessly failed and omitted to remove said slate, dirt, etc., but allowed it to remain there, knowing that it was unsafe and dangerous, and knowing that said August Schmidt would be required to work therein and pass thereby; that on the said date August Schmidt was hauling two loaded cars along through said entry to the bottom of the shaft of said mine, exercising due care, and without notice

or knowledge that said slate, coal, etc., had fallen from the roof of said entry or that said entry was obstructed; that upon reaching a point on the railway track opposite said slate said Schmidt discovered a car upon said railway track immediately in front of him, and seeing that a collision was inevitable between the cars, to avoid being injured he attempted to get off said railway track on the rib side but there came in contact with said slate, that prevented him from escaping in that direction and threw him back on the railway track between said cars, which crushed him, from the effect of which he died; that August Schmidt had knowledge of the practice of the defendant to keep that portion of the entry lying between the railway track and the rib side of said entry free and clear of obstructions and relied on the defendant doing so, and that when said Schmidt undertook to avoid the collision he believed that portion of said entry to be free from obstructions and expected to escape the collision by going in that direction."

It will be found from a comparison of this count with the first count of the declaration upon which the trial took place and upon which count the verdict was rendered, that the only substantial difference in their averments is, that in the first count of the last declaration it was averred that it was the practice to keep a space clear on both sides of the tracks, when practicable, so that the drivers might pass around cars standing thereon, while in the first count of the declaration filed on February 3, 1902, it was stated that the practice was to keep a space clear upon the rib side of the tracks so that drivers might pass around cars standing on the tracks. We think the averment that it was its practice to keep a space clear on both sides of its tracks fairly included the averment that it was its practice to keep a space clear upon the rib side of its tracks, and that it cannot be said that the cause of action stated in the first count of the declaration, under which the trial took place, is not the cause of action stated in the first count of the declaration filed on

February 3, 1902. The cause of action of the plaintiff was
the failure of the defendant to keep its entry and tracks free
from obstructions. That neglect of duty was fully set out
in the declaration filed on February 3, 1902, and the decla-
ration filed on April 21, 1902, stated the same cause of
action, differing in statement only as to detail. This was
not the statement of a new cause of action. (*Swift & Co.*
v. *Madden,* 165 Ill. 41; *Town of Cicero* v. *Bartelme,* 212
id. 256.) The trial court did not err in sustaining the de-
murrer to the plea of the Statute of Limitations to the first
count of the declaration.

It is next contended by the appellant that the court should
have held, as matter of law, its plea of former acquittal a
bar to the action. The plea was filed to the second count of
the declaration only, and as the jury returned a verdict in
favor of the plaintiff upon the first count only, it would seem
there was no recovery upon the cause of action set out in the
second count,—in other words, that the jury found the plea
of former acquittal as to the second count to have been sus-
tained. Be that, however, as it may, the record as to the
plea of former acquittal stands now the same as it did when
the case was here before. The defendant then did not assign
as error the action of the trial court in refusing to hold said
plea a bar to the action, and having failed to raise that ques-
tion then it cannot raise it now. Parties cannot bring their
cases to this court in piecemeal, but must raise all questions
presented by the record upon the first appeal by a proper as-
signment of error, which they desire the court to pass upon,
or they will be deemed to have waived such questions and
cannot be permitted to raise them upon a subsequent ap-
peal. (*Ogden* v. *Larrabee,* 70 Ill. 510; *Lusk* v. *City of Chi-
cago,* 211 id. 183.) In the *Ogden case* it was said (p. 512):
"It is insisted the alleged error may be considered, for the
reason it was not assigned for error on the former hearing.
* * * If the doctrine insisted upon should be adopted and
the parties permitted to assign successive errors on the same

record, in complicated litigation like this no conclusive decision could be rendered in the lifetime of the parties interested. * * * The error complained of existed in the former record. The party had an opportunity then to assign it and direct the attention of the court to it, but having failed to do so he ought to be estopped, upon every principle of justice, from alleging, at any future period, error in the same record. Had error intervened prior to the former adjudication it was his duty to assign it, otherwise he will be deemed to have waived it forever. He will not be permitted to have his cause heard partly at one time and the residue at another." In the *Lusk case* it was said (p. 188) : "It is a well settled rule that when a cause is litigated and that litigation prosecuted to a court of appeals and passed upon, all questions that were open to consideration and could have been presented, relating to the same subject matter, are *res judicata*, whether they were presented or not."

At the close of all the evidence the appellant made a motion for a directed verdict, on the ground that the appellee had failed to make a case. The evidence introduced on behalf of the appellee fairly tended to show that the defendant was the owner of and engaged in operating a coal mine, in which were situated many entries and passageways which had located therein tracks upon which were hauled, by mules, coal cars to and from the bottom of the shaft; that it was the practice of the defendant, in the operation of its mine, to keep clear from slate and other obstructions the space upon both sides of said tracks where practicable, so that the drivers of the mules which hauled said cars could escape from the tracks in case of collision or other dangers upon the tracks to a place of safety at the side of the tracks, which practice was known to and relied upon by the drivers; that in one of the new entries in the mine, some two days prior to the injury to Schmidt, a large amount of slate had fallen from the roof and completely covered the track at the point where it fell; that the defendant had notice of such

obstruction but Schmidt had not; that the employees of the defendant whose duty it was to remove said fallen slate piled a portion thereof upon the rib side of the entry, in close proximity to the track; that a car loaded with coal was left standing upon the track at the place where said slate had fallen; that Schmidt was directed to go into that entry and haul cars loaded with coal; that as he was passing the point in the entry where said slate had fallen, which was down-grade, with a trip of two loaded cars, he discovered said car upon the track when too late to avoid a collision; that he attempted to escape from between the cars he was hauling and the standing car upon the rib side of the entry; that by reason of the obstruction placed between the track and the rib side of the entry he was unable to reach a place of safety, but was thrown back upon the track between the standing car and the trip of cars at the time of the collision, and was crushed and bruised by the colliding cars in such manner as to cause his death. When the case was here upon the first appeal the evidence was substantially the same as it is upon this appeal, and it was then held the evidence fairly tended to support the plaintiff's cause of action, and that the court did not err in declining to take the case from the jury. We think the evidence found in this record fairly tends to support the plaintiff's cause of action. The questions of the defendant's negligence, Schmidt's contributory negligence, and whether or not it was the practice of the defendant, in its mine, to keep the space clear upon both sides of its tracks, so that its drivers might escape to a place of safety in case of a collision or other accident upon the tracks, of which practice Schmidt had notice and upon which he relied, were all questions of fact which we think the evidence fairly tended to establish. The court did not err in declining to take the case from the jury at the close of all the evidence.

On the trial Henry Genteman, over the objection of the defendant, was permitted to testify substantially as follows: "On the 28th of March, 1900, I was working for Murens.

I was working in room 7, entry 8. William Wright was my partner. I knew August Schmidt. He was driving. There was a fall of slate there on Monday morning. The car we were loading was standing on the main track. We were sitting in the cross-cut, lunching, about twelve feet from the car. The first thing I heard was the cars bump. We jumped up and ran right over to him. The cars were brought close together. Schmidt said he could not get out on account of the slate,—he said he could not make it. The slate he referred to was on the rib side. It was about half as high as the car." Over the objection of defendant William Wright testified to substantially the same facts. It is contended the facts testified to by these witnesses were not so closely connected with the injury as to make them a part of the *res gestæ*, and that their admission constitutes reversible error. The injury, the arrival of the witnesses and the explanation to them by Schmidt as to the manner in which the injury took place occurred almost simultaneously. There was no opportunity on his part for deliberation or fabrication, and we think the evidence was admissible. *Quincy Horse Railway and Carrying Co.* v. *Gnuse,* 137 Ill. 264; *Springfield Consolidated Railway Co.* v. *Welsch,* 155 id. 511; *Springfield Consolidated Railway Co.* v. *Hoeffner,* 175 id. 634.

It is also urged that the court erred in its rulings upon the admission and exclusion of evidence, and it is said the jury were misdirected as to the law. We have considered all the questions raised by the appellant in regard to the rulings of the court upon the evidence, and have examined the instructions given to which objections have been made and those which were refused, and think the rulings of the court upon the evidence and instructions substantially correct. The facts are not complicated, and three juries have, after hearing the evidence, found in favor of the plaintiff. The evidence admitted over the objections of the defendant, other than the testimony of Genteman and Wright, was upon subjects of minor importance, and the same may be said of the

evidence which was excluded, and the jury, we think, were fully and fairly instructed as to the law of the case, and we have found nothing in the record which would justify a reversal of the case.

The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*