ALBERT SPEVACK, Administrator of the Estate of JAMES SPEVACK, Deceased, Appellant, v. COALDALE FUEL COMPANY.

**Evidence:** *Res gestae.* Statements of the manner of an accident
1 resulting in death the following day, made by deceased within a few minutes after the accident, are admissible as part of the *res. gestae.*

**Mines and mining:** NEGLIGENCE OF OPERATORS: EVIDENCE. An agree-
2 ment between the owners and operators of mines providing that the operators should furnish timbers and the miners should keep the rooms securely propped has relation to the duty of the operators concerning the safety of the miners, and not their duty toward drivers in the operation of cars for the removal of coal; so that evidence of a custom making it the duty of certain employees to· keep the tracks in a safe condition for drivers after the roof had been propped for working the mine was admissible, as bearing on the duty of the operator to a driver.

**Same:** PROOF OF CUSTOM. Where it is customary for a pit boss and
3 timbermen to inspect the entries and deserted rooms used as entries, through which coal was hauled, the driver of a car may rely on such custom as a protection against danger from improper timbering.

**Same:** VICE PRINCIPAL: NEGLIGENCE. A pit boss charged with the
4 duty of seeing that entries in a mine are kept in a safe condition is a vice principal, whose negligence will charge the master with liability for failing to furnish the driver of a coal car a safe place to work.

**Same:** CONTRIBUTORY NEGLIGENCE: EVIDENCE. Under the evidence in
5 this case the question of whether plaintiff was negligent in being caught between the mule he was driving and the car was for the jury.

**Same:** NEGLIGENCE: EVIDENCE. Whether the mine operator in this
6 instance used reasonable care in the inspection and timbering of the entries and in maintaining the tracks in reasonbly safe

condition, was for the jury. It is also held that the question of whether defendant had assumed toward plaintiff the obligation of looking after the safety of the entries was for the jury.

Same: NEGLIGENCE OF MASTER: EVIDENCE. The evidence is reviewed and held sufficient to show negligence of defendant in allowing a timber with protruding spikes to remain over the track in such position that the harness of the mule decedent was driving might catch thereon causing a collision of the car with the mule, between which decedent was compelled to ride.

*Appeal from Polk District Court.*—Hon. Hugh Brennan, Judge.

Thursday, June 8, 1911.

Action to recover damages for loss to the estate of James Spevack resulting from his death alleged to have been due to the negligence of defendant company, in whose employment he was engaged at the time of his death as driver in its coal mine. At the conclusion of the evidence introduced on both sides, the court on defendant's motion directed a verdict in its favor, and from judgment on this verdict the plaintiff appeals.—*Reversed.*

*E. A. Lingenfelter,* for appellant.

*Carr, Carr & Evans,* for appellee.

McClain, J.—There was evidence tending to show that decedent, an experienced coal miner, was employed on the day of the accident in question as a driver in defendant's mine, and that it was usual for the driver to crouch between the mule and the loaded car, his left hand on the back of the mule, his left foot on the draw chain, his right foot on the bumper of the car, and his right hand on the car itself; it being necessary for him to ride in this position because the entries through which the cars must

be hauled were little higher than the back of the mule.
The evidence also tended to show that, after the accident,
decedent was found at what is called the "parting" in an
entry, complaining of having been injured by getting
squeezed coming out of a room with a car of coal, and that
the mule got caught on a cap piece of the timbering and
the car squeezed him. A witness who heard deceased make
this statement was directed by the pit boss to go back along
the entry and find the mule and car which he did, and
found the car with the mule still attached, the hind wheels
of the car off the track at a place in a room designated as
No. 7, turned off from entry D, in which decedent was found,
and about thirty-five feet from the entry, a tie, similar to
the ties used in laying the track was found hanging by a
projecting spike from the hames of the mule. There was
also evidence tending to show that such ties were sometimes
used as cap pieces by the miners in erecting supports for
the roof as the mining progressed, and that about fifteen
to eighteen feet back of the car a prop was leaning. The
jury might have found from this evidence, including the
declarations of deceased that a tie with a spike projecting
from its lower side had been used as a cap piece on top of
a prop in room seven; that, as the mule driven by decedent
passed under it, the spike caught in the hames of the mule,
causing him to be suddenly stopped, so that the loaded car
ran against him, squeezing decedent, who was riding in
the usual position between the mule and the car; and
that as a result the cap piece was forced from its place,
and remained hanging on the hames of the mule. As a re-
sult of the injury received by decedent he died the next
day at the hospital; it being discovered by *post mortem*
examination that his intestines had been ruptured by the
injury. The negligence alleged was in failure to provide
decedent with a safe place in which to work, and the prin-
cipal controversy was as to whether at the place of the
happening of the accident the defendant was chargeable

with the condition of the props and cap pieces supporting the roof which had been originally placed by the miners working in room seven as the work progressed. With reference to this question, the evidence will be more fully commented upon in the second division of the opinion.

I.   The only direct evidence which placed the injury to decedent as happening where the mule and car were found consisted of the declarations of deceased made in entry D, some little distance from room seven, that he had been hurt by being squeezed between the mule and the car; it appearing that a short time before the accident deceased had been driving this particular mule. In this connection the contention for defendant is that the declarations of deceased were not a part of the *res gestae,* and therefore not admissible, and without such declarations it would not appear where or how the injury to decedent occurred. We think, however, that the declarations were sufficiently connected with the accident and were made within such a short interval of time after it occurred that they were properly received in evidence. Under all the circumstances, it is clear that but a few minutes could have intervened between the time when the injury was received and the time when the declarations as to the cause of the injury were made. For the purpose of connecting the injury with the accident, the relation between the two was sufficiently close to render the declarations admissible. *Rothrock v. Cedar Rapids,* 128 Iowa, 252, and cases cited.

1. EVIDENCE: *res gestae.*

II.   In order to solve the question whether there was any evidence tending to show that at the place where the accident happened the defendant was chargeable with the duty of seeing that the props and supports were in safe condition with reference to the use of the track by decedent for the purpose of his employment as driver, some further details of the evidence must be noticed. Entry D was a long entry,

2. MINES AND MINING: duty of operators: evidence.

through which cars loaded with coal were hauled to the
shaft.   Off of this entry successive rooms and air courses
had been turned.   One of the rooms thus opened off of the
entry was room seven, where the accident occurred, which
had been in use as a room for more than a year.   At the
time of the accident, it was of a length of about two hun-
dred and twenty-five to two hundred and fifty feet from
the entry to the face of the coal at its extreme end where
mining was still being carried on.   At the side of this room
seven, about one hundred and twenty-five feet from the
entry, another room had been opened from which cars of
coal were drawn out along the track, as well as cars of coal
from the extreme end of the room, and the place at which
the accident happened was nearer the entry than the open-
ing into this side room.   Some of the witnesses designate
room seven thus used as a subentry.   With reference to this
situation, defendant introduced in evidence from "The Des
Moines Agreement of the United Mine Workers and Oper-
ators," which applied to the operation of this mine certain
resolutions, in which it is recited that the company shall
furnish all necessary timbers and the miners shall keep
their rooms securely propped; that if a miner working in
a room fails to securely prop the same or neglects to prop
as directed by the pit foreman, or carelessly shoots down
the props or timbers, and a fall of slate occurs through
such failure, neglect, or carelessness, he shall immediately
clear his roadway of such falls of slate and do all neces-
sary retimbering, and, in case of his neglect to do so, the
company may do such work and charge the expense thereof
to such miner; further, that, in case the room has been
properly timbered and the roof from any cause becomes
so heavy as to require double timbering, the company shall,
when notified by the miner, do the necessary work to pro-
tect the roadway; and, further, that, when a fall of slate
shall occur between the inside props and the face of the
room of an averaging thickness not to exceed three inches,

he shall immediately remove such fall, and, in case of his failure to do so, the company may do such work and charge the expense thereof to such miner, while, if the fall is of a greater thickness, he shall notify the pit foreman who is to furnish the necessary labor to make such removal. It is contended for defendant that, under these resolutions, the safety of the roof and the sufficiency of the timbering was left to the miners in charge of the rooms, and that, if the timbering was improper so as to result in injury to decedent, the fault was with the miners themselves, who had erected the props, and who were fellow servants of the decedent. Plaintiff offered evidence tending to show a custom and usage by which it was the duty of the pit boss and the timberman working under him to maintain all the tracks and roads in the mine in a safe condition for the drivers, after the miners had set up their timbers as they worked out the room. Although this testimony as to custom and usage had been admitted, the trial court on defendant's motion struck it out as being irrelevant to any issue in the case, and of this ruling appellant complains.

We think the ruling was erroneous. The resolutions above referred to evidently related to the duty of the defendant with reference to the safety of the miners, and not with reference to its duty as to the safety of drivers employed in their work in operating cars and the removal over such tracks of coal from distinct portions of the room or from other rooms which had been opened from it. It is conceded that defendant was chargeable with the duty of maintaining the entries in a safe condition for use by the drivers and the portion of room seven in which the accident happened was not in the nature of its use different from an entry.

If it was customary for the pit boss and the timberman working under him to inspect the entries and those portions of the rooms which were used practically as entries through which coal should be hauled, decedent had,

we think, a right to rely upon such custom as a protection
against danger from improper timbering. We
see nothing in the custom and usage incon-
sistent with the resolutions above referred to, for they re-
late to different and distinct dangers.  Surely decedent in
driving along a track which had been in use for a year
was justified in assuming that such tracks and the supports
over it had been inspected by the defendant's pit boss, and
that they were being kept in safe condition for his use.
The miners working in the remote portion of the room had
no further responsibility with reference to such supports
in seeing that they remained safe and in a suitable condi-
tion for decedent's use.

3. SAME: proof
of custom.

If the pit boss was negligent in the inspection of the
track at the place where the injury happened or in seeing
that the supports were proper in order that plaintiff
might safely pursue his work in the usual
manner, then the defendant failed to use rea-
sonable care in providing for decedent a
safe place to work, for in this respect the pit boss was
necessarily a vice principal, and not merely a coemployee.
Decedent had had nothing to do with the preparation of
this place to work, and he was not chargeable with any
duty of general inspection.

4. SAME: vice
principal:
negligence.

If it should be contended that he was guilty of con-
tributory negligence in not discovering and avoiding the
danger of the cross-piece above the entry from which spikes
protruded being caught by the harness of the
mule in passing under, it is sufficient to say
that the question must necessarily be for the
jury, because this portion of the track was not lighted, and
the only means of discovering the condition of the over-
head supports was by the light from the lamp in decedent's
cap which was the only light available to him in the driv-
ing of his mule and the operation of the car.

5. SAME:
contributory
negligence:
evidence.

With this evidence of custom and usage properly in

the case, it was for the jury to say whether the defendant

had used reasonable care in the inspection

**6. Same:** of the track and the timbering and in main-
negligence:
evidence.
taining the track and supports in a reason-

ably safe condition for decedent's use.

Some question is made for defendant as to whether there was any competent evidence of custom and usage; the contention being that the testimony relating thereto had reference to some assumed subordinate agreement between the miners' union and the defendant, which was not proven. But we are satisfied that without any evidence of such subordinate agreement there was still enough evidence to go to the jury on the question whether in the operation of this mine defendant had by its method of conducting its operations assumed toward decedent the obligation of looking after the safety of the place so far as he and persons in similar employment were concerned. On this question the following language from the opinion in the case of *Thayer v. Smoky Hollow Coal Co.,* 121 Iowa, 121, is quite pertinent:

One of the close questions in the case was, of course, the defendant's duty to look after the safety of the place where plaintiff received his injury. If plaintiff were making the place himself, and was solely responsible for its creation, condition, and care, then, of course, the rule as to the duty of the master to furnish his employee a safe place to work does not apply. On the other hand, if defendant had assumed the care of the place or was required to inspect and care for it, then it was liable if it failed to exercise ordinary care and diligence in looking after the safety of its employees, who were required to use the place in going about their work. The rules of law which apply to such cases are well understood and explained in *Union Pac. v. Jarvi,* 53 Fed. 67 (3 C. C. A. 433). But the exact time when a master's duty begins is not fixed by any arbitrary rules. We have already held that evidence of custom and usage is material on this question, for such evidence does not vary an established rule of law, or in the

absence of express stipulations and definite contract rela-
tions between the parties. *Taylor v. Star Coal Co.*, 110
Iowa, 40. If the employee was in control, then he was un-
der a statutory duty to prop the roof and properly timber
the entry; but, if this was a duty devolving upon the de-
fendant by reason of custom or otherwise, then the obli-
gation rested on it, and not on its employee, who was with-
out authority or control. This matter has already been
decided against appellant in *Corson v. Coal Mill Co.*, 101
Iowa, 224, as well as in the *Taylor* case, *supra*.

III. The suggestion that there was no evidence tend-
ing to prove negligence of the defendant with reference to
the condition of the support over the track at the place

7. SAME:
negligence
of master:
evidence.

where the accident happened is fully met by
the testimony which tended to show that
this portion of room seven had been in use
practically as an entry for a considerable length of time;
that it was the custom to inspect the entries and portions of
rooms thus used daily; and that the supports over the
track where the accident happened must have been in place
for a considerable period of time. The jury might well
have found that there was negligence on the part of defend-
ant in allowing this cap piece with projecting spikes to re-
main in position over the track at this place with the dan-
ger that the harness of a mule passing under it might be
caught, with the natural result that the mule should be
checked and the loaded coal car following him should run
against the driver crouching between the mule and the car.

As we think the court erred in striking out the evi-
dence as to custom and usage and in directing a verdict
for defendant, the judgment is reversed.

Appellant's motion submitted with the case to strike
appellee's amendment to the abstract on the ground that it
was not filed within the time required by the rules is over-
ruled. It does not appear that the delay in filing the
amended abstract operated in any way to appellant's preju-
dice or was unreasonable under the circumstances shown by

affidavits in resistance to the motion. The judgment is *reversed*.