## MILLS *v.* ROBERTS.

### Opinion delivered November 4, 1918.

1. MASTER AND SERVANT—DUTY TO FURNISH SAFE PLACE.—It is the duty of a master to exercise ordinary care, not only to provide his servant with a safe place for the performance of his duty, but also to exercise the same care to keep the place in such condition.

2. MASTER AND SERVANT—NEGLIGENCE—BURDEN OF PROOF.—Under the Federal Employers' Liability Act, the burden is on the servant alleging that the master's negligence caused his injuries to prove that the master was negligent.

3. MASTER AND SERVANT—QUESTIONS FOR JURY.—Where plaintiff, a brakeman, was injured at night by striking a coal car on a switch track, at a time when he alighted from his engine to throw the switch, and the evidence tended to prove that, if the coal car had been properly placed, plaintiff would not have been injured, the questions whether the master was negligent and whether plaintiff was negligent or assumed the risk, were issues for the jury.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

## STATEMENT OF FACTS.

This action was brought by the appellee against the appellant to recover damages for personal injuries alleged to have been sustained by the appellee while he was in the employ of the appellant as a brakeman. The appellee alleges in substance that on the 6th day of April, 1916, the appellant, as receiver of the Ft. Smith & Western Ry. Co., was operating the railroad and engaged at the time in the carriage of commerce from Oklahoma to the State of Arkansas and other States; that when the train on which appellee was employed as brakeman arrived at Weleetka, Oklahoma, a station on the railroad, it became appellee's duty to throw and adjust the switch at the station so as to switch out of the train a car onto the sidetrack in order to leave the car at the station; that the employees of the appellant had wrongfully and carelessly left a coal car on the switch track at Weleetka, more than a car length nearer the east end of the switch track than it should have been placed to be reasonably safe for switchmen in leaving a train on the main line track to do switching on the side tracks; that the car on the passing track was two car lengths from the switch point, and it should have been at least three car lengths back from that point to be in the clear; that appellee did not know that the car had been left on the side track at the time; that appellee, in leaving the locomotive for the purpose of throwing the east end switch at the station, struck the car so placed on the side track with great force and violence which caused him to be knocked down and run over by the train and severely injured. The nature of his injuries is fully described in his complaint.

The appellant denied the allegations of the complaint as to negligence, and set up the affirmative defenses of contributory negligence and assumed risk on the part of the appellee. The appellant concedes that the appellee was engaged in interstate commerce at the time of his injuries and that his cause of action arose under the Federal Employers' Liability Act. The issue presented is,

therefore, whether or not appellant is liable under that act.

Appellee testified that when the train on which he was employed as brakeman arrived at Weleetka about 3 a. m. on April 6, 1916, all cars in the train were loaded. The conductor instructed the appellee to set out the head car in the train onto the siding. When the train was pulling into Weleetka, appellee got out into the deck of the engine. It was dark, and the train was running 2 or 3 miles an hour. When he reached the place to set out the car, he stepped off and hit the car on the passing track. The appellee struck the car with head and arms just as he stepped on the ground. He did not know the car was on the side track when he got off the engine. The car was not supposed to be there. The track was supposed to be clear. It was about 10 feet between the rails of the main line and side track where appellee got off the engine. The side track was connected with the main line at both the east and west ends, and was about a quarter of a mile long. There was a switch at each end. The appellee did not see any other cars on the side track. The car appellee struck was a coal car. The engine was equipped with an electric head-light. From the point where appellee started to step off, the head-light would not enable appellee to have seen the car on the siding. Appellee had a lantern when he got off of the engine, and his first knowledge of the presence of the car on the siding was when he hit it. Appellee passed the track at Weleetka 12 or 16 times a month; had picked cars up on the passing track at Weleetka and may have set them out there. The night was cloudy. The electric head-light on the engine would reach considerable distance. The appellee had been riding on the fireman's seat in front of the fireman for 40 minutes before he got down. He did not look before reaching the point where he got off, to see whether any obstructions were there. The step to the engine was about 18 inches above the ground. Appellee stepped about 18 inches out in the direction the train was moving. The engine cab was within 2 feet of the car appellee

struck. These coal cars are from 36 to 40 feet long. The fact that the train was running slow was the only indication appellee had of the place where he was to get off. Standing on the gang-way of the engine, appellee was on a level with the bottom of the coal car. Box cars are from 14 to 15 feet from the ground to the top, and coal cars from 7 to 8 feet. Appellee was asked if he couldn't have seen the car he struck for a distance of 30 feet, passing along within 2 feet of it if he had looked, and answered he did not know. It is customary for a person in getting off a train going 2 or 3 miles an hour to get off in the direction the train is moving.

A witness, M. V. Russell, testified that he was a brakeman and switchman for the Missouri Pacific Ry. Co., and had had 11½ years experience in railroad work. In witness' opinion the cars should ordinarily be placed from 75 to 100 feet back on the side track from the frog. Seventy-five feet from the point of frog is the standard. If a switchman got off the engine and stepped into a car, witness would say that the car on the side track was not at the right place to make it safe. After a car reaches a place where the tracks are parallel, it makes no difference how far down track car is placed. It would be just as safe at one place as at another. With an electric headlight on an approaching engine, a car upon the side track with space between main line and the siding 9 feet in the clear could be seen from the engine between ½ and ¼ of a mile. A car may be seen 10 or 15 feet distant away by a brakeman with a lantern in his hand. It is the duty of brakemen to watch out and see what is on the tracks. The standard distance of passing tracks from the main line is about 9 feet and 6 inches.

Oscar Allstrand, a witness on behalf of the appellant, testified that he was a roadmaster on the railroad appellant was operating; that he had been in the service about 22 years and was familiar with conditions at Weleetka on April 6, 1916. The distance between main line and passing track is 14 feet from center to center at the point where side track parallels the main line, called the clear-

ance point. It is 72 feet from the switch point to point of frog. Switch stand is opposite switch point. It is 72 feet from point of frog to point of clearance on passing track. It was 144 feet from the east end of switch point to the point of clearance on passing track. The side track would hold 23 cars and was about 920 feet long. The passing track at Weleetka was called ''short pass'' and was connected only at one end. It was used to set out cars on. It was 144 feet from the. end of the switch to the place where the tracks were 14 feet from center to center. It was about 9 feet 3 inches from the outside rail of main track to inside rail of siding. Coal cars are 9 feet 3 inches in width at the floor. The sides extend over the rail about 12 inches. Frame of coal car standing on track would extend out some 22 inches further than rail. Witness did not know how far the locomotive would extend. A coal car is about 36 feet long. The track at Weleetka is standard gauge.

The fireman who was on the engine of the train, from which the appellee stepped on the night of his injury, stated that he saw the appellee when he stepped off the engine. He stepped to the ground and made two steps and ran into the car on the side track. He struck his head against the car and fell or ran back about 8 feet. The train struck him in the back. Witness saw appellee strike the box car. Witness did not know how far the car was from the switch point or frog. The cab was lighted with electricity and the engine was equipped with good electric head-light. Witness first noticed the box car when he got even with it. After appellee's injury the car that he was to put on the side track was placed there. It was in the clear about one car length and was the east car on the side track. The car appellee ran into was standing just where it was when he got hurt. At the place where appellee got off the engine, the head-light would not show the car that appellee struck. Witness did not see the car on the side track until he got opposite it, because he was watching Roberts to get a signal from him as to where he

wanted the engine to stop so he could uncouple the car and place it on the spur track.

The testimony of the above witnesses was corroborated by others, and there was testimony by expert railroad employees that the standard distance from center of main line and passing track is 14 feet, and for side tracks 13 feet; that 4 feet is sufficient space between box cars and engine for a man to get off and do his work when train is moving from 2 to 4 miles per hour. At least one of these witnesses testified that if a man had a lantern in his hands which would throw light 10 or 15 feet, he would be bound to see the car on side track. The issues of negligence, contributory negligence, and assumed risk were submitted to the jury under instructions upon which we will comment in the opinion. There was a judgment in favor of the appellee, from which is this appeal.

*Warner, Hardin & Warner,* for appellant.

1. The evidence was insufficient to show negligence on the part of defendant and a verdict should have been instructed. Plaintiff was engaged in interstate commerce and his cause of action arises under the Federal Employer's Liability Act. 62 U. S. (L. Ed.) 618; 241 U. S. 333; 244 *Id.* 147, 170. The burden was on plaintiff to show negligence; that the place was unsafe and that the master had notice of the defect or by exercising ordinary care could have discovered it. Bailey, Personal Inj. (2 ed.) § 280; 71 Ark. 445; 79 *Id.* 445; 51 *Id.* 467; 74 *Id.* 518; 184 Fed. 43; 142 *Id.* 320; 149 *Id.* 667; 174 *Id.* 377; 179 *Id.* 530; 179 U. S. 658; 166 *Id.* 617; 118 Ark. 309, etc.

2. Plaintiff assumed the risk and cannot recover. 223 U. S. 492; 62 U. S. (L. Ed.) 168; Sh. and Redf. on Neg. (6 ed.) § 208; 106 N. W. 213; 56 *Id.* 612; 126 Fed. 511. The danger was obvious. 126 Fed. 524; 195 *Id.* 725; 121 Ark. 556; 118 *Id.* 309.

3. The court erred in giving instruction 5 for plaintiff. It is clearly erroneous and prejudicial. It tells the jury in direct terms that it was the mandatory duty of defendant to furnish plaintiff a place to get off the train

that was reasonably and ordinarily safe and to exercise ordinary care to keep and maintain the place in a safe condition. Such is not the law. 223 U. S. 492; 118 Ark. 309, and cases *supra.*

4. It was also error to give No. 6. It is fatally defective. Cases *supra.*

5. Also in giving No. 8. It is misleading and prejudicial. *Supra.*

6. Also in giving No. 12. It assumes that there was evidence that defendant negligently left the car in a dangerous position on the side track. There is no such proof.

7. Also in giving No. 13. Roberts' Injuries to Interstate Employees, § § 17, 113; 233 U. S. 42; 229 U. S. 114, etc.

*Sam R. Chew,* for appellee.

1. The proof brings this clearly within § 1, Acts 1908; 35 Stat. L. 65. Defendant was clearly negligent.

2. The instructions clearly state the law under the act and there is no error.

WOOD, J., (after stating the facts). As to whether or not appellant was negligent, and whether or not appellee was guilty of contributory negligence or assumed the risk, were, under the evidence, issues of fact for the jury. The testimony on behalf of the appellee tended to show that a coal car was left on the side track at a point so close to the main line track that the appellee in stepping off the engine on the main line in the performance of his duty as brakeman struck this car which caused the injuries of which he complained. The evidence tended to prove that if the coal car had been placed or left beyond the point of clearance or in other words at the right place on the passing track the appellee would not have been injured while stepping from the engine on the main line to the ground.

It was the duty of the appellant to exercise ordinary care, that is, such care as a person of ordinary prudence would exercise under the same circumstances, not only to provide appellee with a safe place for the performance

of his duty, but also to exercise the same care to keep the place in such condition. This familiar rule is announced in *St. Louis Southwestern Ry. Co.* v. *Lewis,* 91 Ark. 343-349, and other cases there cited, and in many cases collated in 3rd Crawford's Digest, pp. 3388-89-90. See also *Kansas City Southern Ry. Co.* v. *Livesay,* 118 Ark. 304-309. "The common-law rule," says the Supreme Court of the United States, in *Seaboard Airline Ry. Co.* v. *Horton,* 233 U. S. 492-501-502, "is that an employer is not a guarantor of the safety of the place of work, or of the machinery and appliances of the work. The extent of its duty to its employees is to see that ordinary care and prudence are exercised to the end that the place in which the work is to be performed, and the tools and appliances of the work may be safe for the workmen." The burden was upon the appellee under the Employers' Liability Act to prove that appellant was negligent. *St. L., I. M. & S. Ry. Co.* v. *Steel,* 129 Ark. 520-35 *et seq.; New Orleans & N. E. Ry. Co.* v. *Harris,* 62 L. Ed. (U. S.) 1167, U. S. S. C. Advance Opinions, No. 15, July 1, 1918. See also *Patton* v. *T. & P. Ry. Co.,* 179 U. S. 658, 45 L. Ed. 361; *T. & P. Ry. Co.* v. *Barrett,* 166 U. S. 617.

Applying the above rules to the facts of this record, it was plainly an issue for the jury as to whether or not the appellant exercised ordinary care to see that the coal car was set and kept beyond the point of clearance on the side track, or, in other words, at a point where appellee, exercising ordinary care in the discharge of his duties, could not have been injured by collision with such car while merely stepping from the engine on the main line to the ground. It was also an issue for the jury as to whether appellee was guilty of contributory negligence or assumed the risk. The court, in instructions given at the instance of the appellee and also of the appellant, fully and correctly declared the law in conformity with the rules announced in the above cases and applicable to the facts of this record.

It would unnecessarily prolong this opinion and could serve no useful purpose to discuss these instructions in

detail. Negligence was accurately defined, and the rules as to the burden of proof on the issues of negligence, contributory negligence, and assumed risk were also correctly declared. While the verbiage in some of the instructions given at the instance of the appellee was inaccurate, there were no specific exceptions to them, and they were not inherently erroneous. The defects should have been pointed out by specific objections. When these instructions are considered in connection with other instructions given at the instance both of the appellee and the appellant, and the charge is taken as a whole, we are convinced that the law, as above stated, was correctly declared. Some of the appellant's prayers for instructions which the court refused were correct, but these were covered by other prayers which the court granted. The record presents no prejudicial and, therefore, no reversible error. The judgment is affirmed.