## CHESAPEAKE & O. RY. CO. v. MEARS.

### No. 3412.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

William Leigh Williams, of Norfolk, Va., for appellant.

Alfred Anderson, of Norfolk, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment in favor of the administratrix of a deceased railway employee, in an action instituted under the Federal Employers' Liability Act (45 USCA §§ 51–59). The action was based on alleged negligence of the defendant in placing a car on a siding in a position dangerously near a lead or "ladder" track, the contention of plaintiff being that her intestate was knocked from a car passing on the "ladder" track and killed as a result of this negligent placing of the car. Three questions are raised by the assignments of error: (1) Whether the trial judge erred in admitting as a part of the res gestæ a declaration of decedent made shortly after the injury which resulted in his death; (2) whether verdict should have been directed for defendant either because the evidence failed to establish negligence or because it did establish assumption of risk; and (3) whether there was error in the charge relating to the measure of damages.

On the first question it appears that, when deceased was last seen prior to his injury, he was walking on a train of cars which was being moved on the "ladder" track to place two of the cars on a storage track of defendant's Newport News yard. Deceased was the conductor in charge of the movement; and, shortly before reaching track 3, he instructed the witness Mills to drop the two cars and come back to track 3 where deceased would be checking out some cars. When Mills returned about ten minutes later, he found deceased lying near track 3 with both legs cut off above the knees and rapidly bleeding to death. One leg had been completely severed from the body and was lying between the rails of the "ladder" track; the other was hanging to his body by mere shreds of flesh. Mills asked what had happened; and deceased, pointing to the car on track 3, replied, "That car knocked me

off." Defendant duly objected and excepted to the admission of this declaration of the deceased; but the court admitted it as a part of the res gestæ.

We think that this ruling of the court was correct. There is some authority for the position of defendant that the declaration of decedent should be excluded as a mere narrative of a past transaction; but we think that the better rule, and that supported by the weight of modern authority, requires its admission as having been made under the immediate influence of the occurrence to which it related and so near the time of that occurrence as to negative any probability of fabrication. See 31 Yale L. Journal 229, 35 H. L. R. 447; Wigmore on Evidence (2d Ed.) § 1747 et seq. and cases cited. As pointed out by Professor Wigmore, it is not necessary to render such declarations admissible that they be strictly contemporaneous with the occurrence to which they relate and admissible under what it called the "Verbal Act" doctrine. They are admissible, not because they fall without the hearsay rule, as in the case of "verbal acts," but because they fall within an exception to that rule; it being considered that there is a sufficient guarantee of the trustworthiness of such declarations to render them admissible, if they are made under the immediate influence of the occurrence to which they relate. "The circumstantial guarantee here consists in the consideration * * * that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief." To render them admissible what is required is: (1) There be some shock to the feelings sufficient to render the utterance spontaneous and unreflecting; (2) "the utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance"; and (3) it must relate to the circumstance causing the shock to the feelings. Wigmore on Evidence (2d Ed.) § 1750.

Defendant places great reliance upon the decision of the Supreme Court in Vicksburg R. R. v. O'Brien, 119 U. S. 99, 7 S. Ct. 118, 30 L. Ed. 299, where the declaration of an engineer as to the speed at which a wrecked train was traveling was excluded when made from ten to thirty minutes after the wreck occurred. In that case, however, it did not appear that the engineer was suffering from any such shock as was the decedent here, or that the surrounding circumstances furnished any such guaranty of trustworthiness. The case at bar is more nearly like that of Travelers' Insurance Co. v. Mosley, 8 Wall. 397, 408, 19 L. Ed. 437, where upon the trial of an issue as to accidental death the court held admissible declarations by the deceased shortly after receiving his injury to the effect that he had fallen down a stairway and struck his head. What was said by Mr. Justice Swayne, speaking for the court in that case, is applicable here. Said he: "Here the principal fact is the bodily injury. The res gestæ are the statements of the cause made by the assured almost contemporaneously with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress. Where sickness or affection is the subject of inquiry, the sickness or affection is the principal fact. The res gestæ are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority. We think it was properly applied in the court below. In the ordinary concerns of life, no one would doubt the truth of these declarations, or hesitate to regard them, uncontradicted, as conclusive. Their probative force would not be questioned. Unlike much other evidence, equally cogent for all the purposes of moral conviction, they have the sanction of law as well as of reason. The want of this concurrence in the law is often deeply to be regretted. The weight of this reflection, in reference to the case under consideration, is increased by the fact, that what was said could not be received as 'dying declarations,' although the person who made them was dead, and hence, could not be called as a witness."

In Cross Lake Logging Co. v. Joyce (C. C. A. 8th) 83 F. 989, 991, the court held admissible as a part of the res gestæ a statement made by an injured man as to the cause of his injury to a fellow workman who came to his assistance. The court, speaking through Judge Thayer, said: "It is manifest, we think, that the statement made by the plaintiff to Bolin, to which the objection related, was properly admitted in evidence as a part of the res gestæ, because it was so nearly coincident with the occurrence to which it referred that the statement may be regarded as having been made almost involuntarily, without time for reflection, when the

plaintiff's mind was vividly impressed with the true cause of his injury. Statements thus made, which are not a narrative of a past transaction, but spring naturally and without premeditation from the lips of an injured person in the very presence of the circumstances which have produced it, and while the victim is perhaps writhing in pain, are of the highest value as evidence. Railroad Co. v. Lyons, 129 Pa. 114, 18 A. 759 [15 Am. St. Rep. 701]; Railway Co. v. Buck, 116 Ind. 575, 19 N. E. 453 [2 L. R. A. 520, 9 Am. St. Rep. 883]; State v. Murphy, 16 R. I. 529, 17 A. 998; Com. v. Hackett, 2 Allen [Mass.] 136, 139; Greenl. Ev. § 108."

In Peirce v. Van Dusen, 78 F. 693, 707, 69 L. R. A. 705, the Circuit Court of Appeals of the Sixth Circuit, speaking through Mr. Justice Harlan, pointed out that the res gestæ rule cannot be construed so narrowly as to exclude declarations "which did not occur on the very instant of the grinding of the flesh and bones." And in Standard Oil Co. v. Johnson (C. C. A. 1st) 299 F. 93, the rule was held to cover the declaration of a bystander made to the driver of an automobile following an accident, to the effect that the driver had not blown his horn and his silence in the face of this accusation.

One of the leading cases upon the subject is Commonwealth v. McPike, 3 Cush. (Mass.) 181, 50 Am. Dec. 727. In that case a woman, after being stabbed, ran up a stairway and was found bleeding upon the floor of an upstairs room. She asked that a physician be called, saying that her husband had stabbed her and telling what she wished done if she died. This was admitted, not as a dying declaration, but as a part of the res gestæ; the court saying: "The admission in evidence of the statement of the party injured, as to the cause and manner of the injury which terminated in her death, may be sustained upon the ground, that the testimony was of the nature of the res gestæ. The witness describes the situation in which he found the party, her appearance, and her request for assistance, and, in connection therewith, her declaration of the cause of the injury. The period of time, at which these acts and statements took place, was so recent after the receiving of the injury, as to justify the admission of the evidence as a part of the res gestæ. In the admission of testimony of this character, much must be left to the exercise of the sound discretion of the presiding judge."

While a logical basis is not always given for the decisions, the cases almost uniformly hold that a statement made by an injured person as to the cause of his injury is admissible if the time which has elapsed since the injury is so short that he is still under the influence of the happening and his statement presumptively a spontaneous expression growing out of it and not the result of reason and reflection.[1] As said in Louisville, N. A. & C. R. Co. v. Buck, 116 Ind. 566, 19 N. E. 453, 458, 2 L. R. A. 520, 9 Am. St. Rep. 883: "It is not always easy to determine when declarations having relation to an act or transaction should be received as part of the res gestæ, and much difficulty has been experienced in the effort to formulate general rules applicable to the subject. This much may, however, be safely said, that declarations which are the natural emanations or outgrowths of the act or occurrence in litigation, although not precisely concurrent in point of time, if they were yet voluntarily and spontaneously made so nearly contemporaneous as to be in the presence of the transaction which they illustrate and explain, and were made under such circumstances as necessarily to exclude the idea of design or deliberation, must, upon the clearest principles of justice, be admissible as part of the act or transaction itself."

[1] See cases cited in note in 42 L. R. A. (N. S.) p. 952 et seq. and particularly Travelers' Protective Ass'n v. West (C. C. A. 7th) 102 F. 226; Keyes v. Cedar Falls, 107 Iowa, 509, 78 N. W. 227; Moulton v. St. Johns Lumber Co., 61 Or. 62, 120 P. 1057; Union Casualty & Surety Co. v. Mondy, 18 Colo. App. 395, 71 P. 677; Louisville & N. R. Co. v. Earl, 94 Ky. 368, 22 S. W. 607; Southern R. Co. v. Brown, 126 Ga. 1, 54 S. E. 911; Muren Coal & Ice Co. v. Howell, 217 Ill. 190, 75 N. E. 469; Louisville, N. A. & C. R. Co. v. Buck, 116 Ind. 563, 19 N. E. 453, 2 L. R. A. 520, 9 Am. St. Rep. 883; Missouri P. R. Co. v. Baier, 37 Neb. 235, 55 N. W. 913; Pennsylvania R. Co. v. Lyons, 129 Pa. 113, 18 A. 759, 15 Am. St. Rep. 701; Williams v. Southern R. Co., 68 S. C. 369, 47 S. E. 706; Texas & P. R. Co. v. Hall, 83 Tex. 675, 19 S. W. 121; Galveston, H. & S. A. R. Co. v. Davis, 27 Tex. Civ. App. 279, 65 S. W. 217; International & G. N. R. Co. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1000; Missouri, K. & T. R. Co. v. Jones, 35 Tex. Civ. App. 584, 80 S. W. 852; Riggs v. Northern P. R. Co, 60 Wash. 292, 111 P. 162; Brown v. Louisville R. Co., 53 S. W. 1041, 21 Ky. Law Rep. 995; Houston & T. C. R. Co. v. Weaver (Tex. Civ. App.) 41 S. W. 846; International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Texas & P. R. Co. v. Robertson, 82 Tex. 657, 17 S. W. 1041, 27 Am. St. Rep. 929; Ft. Wayne & W. Valley Traction Co. v. Roudebush, 173 Ind. 57, 88 N. E. 676, 89 N. E. 369; Murray v. Boston & M. R. Co., 72 N. H. 32, 54 A. 289, 61 L. R. A. 495, 101 Am. St. Rep. 660; Dorr v. Atlantic Shore Line R. Co., 76 N. H. 160, 80 A. 336; Fish v. Illinois C. R. Co., 96 Iowa, 702, 65 N. W. 995; Louisville & N. R. Co. v. Shaw, 53 S. W. 1048, 21 Ky. Law Rep. 1041; Blackshear v. Trinity & B. Valley R. Co. (Tex. Civ. App.) 131 S. W. 854; Dixon v. Northern P. R. Co., 37 Wash. 310, 79 P. 943, 68 L. R. A. 895, 107 Am. St. Rep. 810, 2 Ann. Cas. 620; Washington & G. R. Co. v. McLane, 11 App. D. C. 220; Missouri, K. & T. R. Co. v. Williams, 50 Tex. Civ. App. 134, 109 S. W. 1126; Spevack v. Coaldale Fuel Co., 152 Iowa, 90, 131 N. W. 653.

■ Coming to the second question, we think that there can be no doubt as to the sufficiency of the evidence to establish actionable negligence on the part of defendant, when the declaration of decedent as to the cause of the injury is considered. There was evidence on the part of plaintiff which, if believed, established the fact that the car on track three was placed too near the "ladder" track for safe clearance; and the statement of decedent shows that he was knocked from the train by this car. This is certainly some evidence to establish the negligence alleged and that this negligence was the cause of the injury which resulted in decedent's death. See Director General v. Bennett (C. C. A. 3d) 268 F. 767; Reardon v. D., L. & W. R. Co., 106 N. J. Law, 172, 147 A. 544; Texas & N. O. R. Co. v. Warden (Tex. Civ. App.) 49 S.W.(2d) 486; Green's Adm'r v. C. & O. R. Co., 197 Ky. 139, 246 S. W. 117; Mills v. Roberts, 136 Ark. 433, 206 S. W. 751.

■ Defendant contends, however, that verdict should have been directed in its favor on the ground that decedent assumed the risk of his injury, this position being based upon the testimony of the witness Graham to the effect that, several hours before the injury occurred, he called the attention of decedent to the fact that the car on track 3 was too close to the "ladder" track and that decedent replied, "It will clear cars." Defendant's argument is that the testimony of Graham, not being contradicted, must be taken as true. It is true that in the federal courts the uncontradicted testimony of a witness to a plain and simple fact capable of contradiction if untrue, which is not impeached or contradicted in any way and which, from any reasonable point of view, is not open to doubt for other reasons, is to be taken as establishing such fact and not merely as raising an issue with regard to it to be submitted to the jury. Chesapeake & O. R. Co. v. Martin, 283 U. S. 209, 51 S. Ct. 453, 75 L. Ed. 983. But, as said by Judge Hutcheson in Mutual Life Ins. Co. of New York v. Sargent (C. C. A. 5th) 51 F.(2d) 4, 6: "Where there are facts and circumstances or the testimony of witnesses which furnish contradiction, or where, as here, the testimony cannot be controverted because it relates to statements by or transactions with a decedent, whose lips are sealed by death, it is for the jury to judge the truth of the testimony, and to say whether the statements attributed to the deceased were in fact made by him. Ætna Life Ins. Co. v. Gallaway (C. C. A.) 45 F.(2d) 391; Casualty Reciprocal Ex. v. Parker (Tex. Com. App.) 12 S.W.(2d) 536; Smith v. Mutual Life Ins. Co. (C. C. A.) 31 F.(2d) 280; Note Kelly v. Jones, 8 A. L. R. 792." The testimony of the witness Graham, therefore, could have done no more than raise a question for the determination of the jury, and as the matter was fairly submitted to them in the charge of the court, defendant has no ground to complain.

■ But on the third point, we think that defendant is entitled to a new trial. On the question of damages the court gave the jury the following instructions: "The court further charges the jury that in this case if they should conclude the plaintiff is entitled to recover damages, such damages, if any, should be equivalent to compensation for deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the decedent. The jury should therefore consider the wages of the decedent at his death, the probability of increase or decrease of his wages, the probability of unemployment, as might be expected to occur during the life expectancy of the decedent and his wife and children, so long as the children would have been legally dependent upon him for support. You will recall that the evidence tends to show that he was an industrious man in good health. And, after deducting from such life earnings such sum as you believe the decedent would have applied to his own use, award the plaintiff the balance. Such an award to the plaintiff would under the act under which this suit is brought, be a pecuniary compensation for the loss the widow and three children sustained in the death of her husband and their father."

This instruction was erroneous, in that it told the jury that the measure of pecuniary compensation which the dependents of the deceased were entitled to recover was the amount of the probable life earnings of decedent less such sums as decedent would have applied to his own use. Plaintiff was entitled to recover, not the future earnings of decedent less his expenses, but a fair recompense for the pecuniary loss which the jury might reasonably conclude resulted to his dependents from his death (Gulf, etc., R. Co. v. McGinnis, 228 U. S. 173, 33 S. Ct. 426, 57 L. Ed. 785; American R. R. v. Didricksen, 227 U. S. 145, 33 S. Ct. 224, 225, 57 L. Ed. 456); and in determining what was a fair recompense, it was incumbent on the jury to consider that contributions by decedent to the support of his dependents would be made over a period of years and to award only the present worth of such contributions, having in mind the interest-bearing quality of mon-

ey. Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 36 S. Ct. 630, 632, 60 L. Ed. 1117, L. R. A. 1917F, 367; Chesapeake & O. R. Co. v. Gainey, 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124; Gulf, C. & S. F. R. Co. v. Moser, 275 U. S. 133, 48 S. Ct. 49, 72 L. Ed. 200.

The rule laid down in the Didricksen Case and quoted with approval in the McGinnis Case is: "The act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained." And the rule of the Kelly Case, quoted with approval in the Moser Case, is: "In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made upon the basis of their present value only."

Our conclusion is that the testimony as to the declaration of decedent was properly admitted and that the motion for a directed verdict was properly overruled, but that a new trial must be granted because of the error in the instruction as to the measure of damages.

Reversed.