LITTLE ROCK & HOT SPRINGS WESTERN RAILROAD COMPANY *v.*

McQUEENEY.

Opinion delivered February 17, 1906.

1. RAILROADS—CONSTRUCTION OF LOOKOUT STATUTE.—Kirby's Digest, § 6607, providing that "it is the duty of all persons running trains upon any railroad to keep a constant lookout for persons and property upon the track," etc., requires a lookout to be kept by persons running cars and engines in a railroad yard. (Page 28.)

2. SAME—DUTY TO KEEP LOOKOUT.—A watchman on duty whose business is to go through the railroad yards to guard and close the open cars, and to see that they are not broken into, has the implied duty of looking after the unloaded cars, and it is his duty to warn a drayman engaged in unloading a car of the approach of a train or to give notice of his presence upon the track to those in charge of the train. (Page 28.)

3. INSTRUCTIONS—WHEN DEFECT CURED.—An incomplete instruction upon the subject of contributory negligence may be aided by other and more explicit instructions given upon the same subject. (Page 29.)

Appeal from Garland Circuit Court; *Alexander M. Duffie,* Judge; affirmed.

*B. S. Johnson,* for appellant.

1. A railway company owes a trespasser on its tracks no duty save to refrain from doing him wanton injury after his presence is known. 45 Ark. 246.

2. The first instruction given by the court was erroneous and misleading. The "lookout statute" does not apply to a case of this character. Defendant was not required to keep a lookout for persons and property off the track nor adjacent to the cars. 57 Ark. 464. If plaintiff was a licensee, the defendant owed him

the duty only to use ordinary care to prevent injury.   57 Ark. 136; 26 Ark. 513.

3. The court erred in giving instructions numbered 4 and 6. There was no evidence that any employee who had charge of looking after the unloading of cars knew the plaintiff was unloading a car.

4. The court erred in its ninth instruction. Where the plaintiff's own testimony raises the presumption of contributory negligence on his part, then the burden rests on him to overcome that presumption.   48 Ark. 130; 51 Ark. 556; 46 Ark. 193.

*Wood & Henderson,* for appellee.

1. Appellant, after delivery of the bill of lading and location of the car on the team track had the right to open the car and unload the freight at any time within reasonable business hours. 18 Minn. 133, 154.

2. There was no error in instruction numbered 1. The statute was not intended to limit the duty of lookout to persons and property literally upon the track. If he were a licensee, ordinary care under the facts and circumstances of this case would require a constant lookout.   72 Ark. 572.

3. Contributory negligence as a defense must be affirmatively proved by the defendant.   58 Ark. 125; 48 Ark. 348; *Ib.* 475; 46 Ark. 436.

BATTLE, J.  James McQueeney, in his lifetime, brought this action against the Little Rock & Hot Springs Western Railroad Company, to recover damages suffered from personal injuries occasioned by the negligence of the defendant, alleging in his complaint that on the 3d day of September, 1902, at Hot Springs in this State, while the plaintiff was engaged in unloading a freight car on defendant's railroad, the servants, agents and employees of the defendant wrongfully, negligently, maliciously and willfully ran a freight car against the wagon upon which he was standing with such force as to throw him to the ground and inflict upon him great personal injuries.

Defendant answered, denying the material allegations in the complaint, and alleging that any injuries received by the plaintiff were due to his own contributory negligence.

The plaintiff recovered a verdict and judgment against the defendant for $4,000; and it appealed.

The evidence in this case tended to prove the following facts:

The Waters-Pierce Oil Company owned a carload of freight which appellant placed on its team or wagon track to be unloaded. On the 3d day of September, 1902, in the forenoon, the agent of the oil company obtained the bill of lading for the goods in the car, and, in company with McQueeney, the teamster for said company, went to the car and opened it, and McQueeney commenced unloading by taking the freight therefrom and hauling it to the warehouse of the oil company. He continued the unloading and, at sometime between four and five o'clock in the afternoon, had hauled about nine or ten loads, and there were yet in the car not quite two loads. Upon returning to the car between the hours named for another load, he found the car closed. Wright, *alias* Rice, an employee of appellant, had just closed it, and was still in the yard. McQueeney informed him that he had not unloaded the car, and that he had made a mistake in closing it. McQueeney then, between four and five o'clock in the afternoon, with the assistance of A. J. Austin, the night watchman for appellant, in the presence of Earl Sanders, the agent of appellant in charge that day, and of Wright, opened the car, and proceeded to unload it. Upon leaving the car with another load, he spoke to Austin, and told him there was still a part of a load in the car, and that he would return for it, and requested him not to close the car, which he agreed to. McQueeney carried the load he then had on his wagon to the warehouse of the oil company, and at five minutes before six o'clock started back to the car for the remaining goods. He had a good team, and made a quick trip, and returned to the car about six o'clock, and, after putting his wagon in position, began to unload. He made nine trips back and forth between his wagon and the car, and was standing on the back end of his wagon in the act of rolling a barrel of oil from the door of the car to his wagon, on his tenth trip, when a car upon the same track was moved up by employees of appellant without, according to the testimony of one witness, ringing the bell of the engine or giving any other warning. The moving of the car caused another car to strike McQueeney's wagon, turn it over, and throw him violently to the ground. He was sixty years old at the time of this

accident, but was a strong, healthy man, and had for the fourteen years previous to that time "been in the continuous employment of the Waters-Pierce Oil Company in hauling freight from the railroad and to customers.   His work required of him heavy lifting, which he had done without difficulty."   His injuries received from the fall were serious.   "He was unable to work, being paralyzed in one leg and injured in his back and one arm and on one side of his head.   For a time his paralysis affected his speech. He suffered great pain from the time of the accident up to the time of the trial, which was over a year, and was still suffering at the time of the trial.   For a considerable time his suffering was severe.   He was still partially paralyzed at the time of the trial, and was then so helpless that he could not dress himself without assistance.   He had not been able to work from the time of the accident up to the trial, and was still not able to do work. *   *   *  At the time of the accident he had steady employment at the salary of $50 per month and perquisites in the way of oil and fuel furnished him by the Waters-Pierce Oil Company, worth $10 per month, making his earnings equal to $60 per month.   His expectancy of life was 14.09 years."

When McQueeney returned to the car that he had been unloading the last time before the accident, it was open and in the same position and condition it was in when he left it at the time he told Austin he would return for the remnant of the freight.   Austin had complied with his promise.   This was in the apparent scope of his authority, which was to close and seal cars when he found them open, and to go through the yards and see that no one was molesting them, to guard them and see that they were not broken into.   It was a rule of the defendant that no freight should be delivered or cars unloaded after six o'clock in the afternoon, but there is no evidence that McQueeney had notice of this rule.   The team track on which the car unloaded by McQueeney stood was straight, and the fireman on the engine which caused the accident could easily have seen McQueeney's wagon if he had looked in that direction, the direction in which the engine moved.

The court gave the following instructions to the jury, at the instance of plaintiff, over the objections of the defendant:

"No. 1.   It is the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons

and property upon the track of any and all railroads; and if any persons or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning and operating any such railroad shall be liable and responsible to the persons injured for all damages resulting from neglect to keep such lookout, and the burden shall devolve upon such railroad to establish the fact that his duty has been performed. But you are further instructed that the failure to keep a constant lookout would not render the railroad liable if the plaintiff himself was a trespasser in going upon said track, or was guilty of any act of negligence contributing to the injury of which he complains.

"No. 4. If you find that the employees of defendant who had charge of looking after the unloading of cars on its tracks knew that plaintiff was engaged in unloading a car, and that he was upon defendant's yards for that purpose after business hours, and you further believe from the evidence that the plaintiff did not know that he was violating any rule or custom of the company, then you will find that defendant owed him the duty not to injure him by any negligent act of its employees in moving cars on said yard.

"No. 6. You are instructed that if you find from the evidence that the plaintiff had spoken to the watchman of the defendant that he was going to return for the last of his freight in a car, and that said watchman knew that plaintiff was hauling freight from said car, and that said watchman had the right and it was his duty to close said car, and that plaintiff did return and found said car at the same place and in the same condition as when he left the same, and you further find that the plaintiff believed, as an ordinary prudent man, that he had a right to unload his freight at the time, then he would not be a trespasser; and if he was injured by negligence of any employee in charge of said train, you will find for the plaintiff.

"No. 9. The burden is on the plaintiff to show; by a preponderance of the evidence, that the defendant was guilty of negligence, and that he was injured by such negligence, to entitle him to recover in this action; and if you find from the evidence that the defendant was negligent, and that the plaintiff was injured thereby, then, in order to defeat his recovery on the ground

that he was guilty of contributory negligence, the burden is on the defendant to show such contributory negligence by a preponderance of the evidence."

And the court modified the second and third instructions asked by the defendant, so as to read as follows:

"No. 2.   If you believe from the evidence that the plaintiff went late in the evening, after business hours, to the yards of the defendant, and after he had been told by the person whose duty it was to seal or open the cars that he could not get into the car that day, then he would be a trespasser, and the railroad company owed him no duty until his presence there was discovered by the persons in charge of the train; and if you believe from the evidence that they had not seen him, and did not know of his presence near the car until after the injury, your verdict must be for the defendant.

"No. 3.   One who voluntarily goes into the yards of a railroad company after it is getting dark, crossing one or two tracks to get there, and after he knows the car has been sealed up to prevent any more unloading that day, is a trespasser, and would be guilty of contributory negligence, and can not recover for injuries received while there."

And gave the following at the instance of the defendant:

"No. 5.   One who is injured by the mere negligence of another can not recover, either at law or in equity, any compensation for the injury if he, by his own ordinary negligence, contributed to produce the injury of which he complains, so that but for his concurring and co-operating fault the injury would not have happened to him; therefore, if you find from the evidence in this case that the plaintiff's own negligence or fault either caused or contributed to the injury, he can not recover.

"No. 7.   If you believe from the evidence that the servants in charge of the train which caused the injury did what men of ordinary prudence and caution would have done under the circumstances, then defendant was not guilty of negligence, and is not liable; but, even if you should believe that defendant is guilty of negligence, still, if plaintiff by his own negligence or fault contributed to the injury, or if his negligence or fault co-operated with the acts of the defendant and caused the injury, your verdict must be for the defendant."

The jury returned a verdict in favor of the plaintiff against the defendant for $4,000, and the court rendered judgment accordingly.

The defendant objected to the instruction numbered one, given at the request of the plaintiff, because it makes applicable to this case the act of the General Assembly, entitled "An act to better protect · persons and property upon railroads in this State," approved April 8, 1891. Kirby's Digest, § 6607. It argues that this act does not require a lookout to be kept by persons running cars and engines in a railroad yard. To sustain this contention, it will be necessary to hold that the tracks in the yards do not constitute a part of the railroad. But this is not true. Every track necessary to its operation is a part of the railroad. The act was obviously intended for the protection of persons and property upon railroad tracks, and all tracks and cars moved thereon come within its provisions. Persons and property upon any railroad track need and are entitled to its protection. The act makes no exceptions, and applies to all cases which come within the mischief intended to be remedied and within its object.

· ·  The act was applicable to the case before us. In the yard in which the accident complained of happened were team or wagon tracks upon which freight cars were placed to be unloaded. The car which the plaintiff was unloading at the time he was hurt was upon one of these tracks. He was unquestionably in need of protection, and was entitled to compensation for the injury he received, unless he contributed to it by his own negligence.

The objection urged by the defendant against the instruction numbered four, given at the request of plaintiff, is that there was no evidence to show "that any of defendant's employees who had charge of looking after the unloading of cars on its tracks knew that plaintiff was engaged in unloading a car, and that he was in defendant's yards for that purpose after business hours." Were there such employees who had such knowledge? Between four and five o'clock in the afternoon of the day on which the accident occurred, plaintiff, in the presence of Sanders, who was then and there in charge, and Wright, who had closed the car, with the assistance of Austin, the night watchman, opened the car and proceeded to unload ·it. He continued to unload until, according to some of the evidence, about twenty-five minutes after six o'clock

in the afternoon, and this was at sunset. No employee could reasonably suppose that he would quit unloading when he hauled away the last load when so little was left in the car at that time to be taken away. Austin, the night watchman, knew he was unloading at the time he was injured, and permitted him to do so. But it is said that he had no authority to look after the unloading of cars. The evidence showed that it was a part of his duty to close and seal cars when he found them open at a time when they should be closed, and at such times to go through the yards and see that no one was molesting them, to guard them and see that they were not broken into. This clearly implied the authority to look after the unloading of cars when he was on duty. He knew that the plaintiff was unloading the car, and through him the defendant had notice, and it was his duty to the plaintiff and defendant to warn him of his danger or give notice of his presence upon the track to those in charge of the train in the yard, and to give the notice in time to avoid injury. There was no evidence that plaintiff knew or ought to have known of any rule of the defendant prohibiting him from unloading the car after six o'clock p. m.

What we have said in reference to instruction numbered four applies to instruction numbered six.

Defendant objects to the instruction numbered nine, because it withdraws from the consideration of the jury the evidence of contributory negligence adduced by the plaintiff. But this defect was covered by other instructions. This instruction does not tell the jury what they should do in the event they found from the evidence adduced by the plaintiff that he was guilty of contributory negligence, but the court in other instructions told them that if they found from the evidence that the plaintiff's own negligence or fault either "caused or contributed to the injury, he could not recover." "From the evidence" necessarily means all the evidence in the case, which includes the evidence adduced by the plaintiff.

We think that the evidence is sufficient to sustain the verdict in this court.

Judgment affirmed.