BUMPAS *v.* SINCLAIR REFINING COMPANY.

4-4020

Opinion delivered November 4, 1935.

*Fred M. Pickens,* for appellant.

*Malcolm Gannaway* and *Jones & Wharton,* for appellees.

JOHNSON, C. J. To compensate an alleged personal injury, this suit was instituted by appellant against appellees, Sinclair Refining Company and L. H. Bacus, in the Jackson Circuit Court. The case was tried to a jury upon the facts adduced by appellant substantially as follows: On June 20, 1934, appellant was in the employ of appellee, L. H. Bacus, and engaged in the business of selling and delivering gasoline, motor oil and other Sinclair products in the trade territory adjacent to Newport, Arkansas. Appellee, Bacus, was the agent of the appellee, Sinclair Refining Company, in that trade territory. Appellee Sinclair Refining Company, owned the warehouse, connected platforms, storage tanks and all merchandise products which were being distributed by appel-

572

lee, Bacus, in that trade territory. A loading platform was maintained by appellees as a part of the warehouse, and it was floored with 2 x 6 boards. On June 20, 1934, as aforesaid, appellant while in the performance of his duties as employee of appellee, Bacus, parked his truck adjacent to the loading platform for the purpose of loading a number of crates of motor oil to be subsequently delivered to certain purchasers. In effecting this loading of oil, it was necessary for appellant to remove a can of oil from the rack located upon the framework of the truck so as to make room for the crates to be loaded. To accomplish this purpose, appellant stepped upon the frame of the truck, in the usual and ordinary manner of doing this work and lifted the can of oil from the rack. Appellant then stepped backwards upon the platform and his foot broke through the flooring thereof, and he was thereby very seriously and permanently injured. Appellant had been in the employ of Bacus for a number of years and was familiar with the warehouse and its surroundings. Some three, four or six weeks prior to appellant's injury, while engaged in loading a barrel of motor oil over this loading platform, he noticed that the board which subsequently broke through with him was in a weakened or broken condition and so reported to appellee, Bacus. Under the agency contract existing between Bacus and the Sinclair Refining Company, the agent, Bacus had the duty of reporting needed and necessary repairs to the Refining Company, but the Refining Company had the duty of effecting such repairs.

In respect to appellant's knowledge of the weakened or broken condition of the board in the platform prior to his injuries, the following questions and answers appear in the transcript:

"Q. Now, back to the time of the injury, now did you know anything about that broken plank or the plank that was cracked in the platform, the one that you fell through there, did you know anything about it before that time? A. Well, about three or four weeks, maybe longer than that, why, me and Mr. Bacus was loading a barrel of oil out, and I had it up and was rolling it along

to get it to the truck, and that plank kind of sagged down with the loaded barrel on it, and I told Mr. Bacus that he had better inspect to see if the plank was broken, and if it was to repair it, that if it was broken some one is liable to step through and hurt themselves. Q. What did he say to that? A. He said: 'All right.' Q. Then, how long was it afterwards—did you pay any more attention to it, or did you rely upon Mr. Bacus to get it fixed? A. I relied upon Mr. Bacus to see that it was fixed if it was broken. Q. How long was it after that until you fell through? A. It was three or four weeks afterwards or longer, maybe. Q. When that plank sagged when you rolled the barrel of oil across it there, was it such a thing as a person could see just casually walking across the platform? A. No, sir. Q. Would it require close inspection to observe it? A. Yes, sir. Q. Did you have—was it any part of your duties to inspect the building or any of the platforms around there? A. No, sir. Q. Were you there a great deal during the daytime? A. No, only just long enough to load and leave.''

Appellant also admitted signing a written statement immediately after the accident, to this effect: ''Something like three weeks before the time I was injured, June 20, 1934, I rolled a barrel of motor oil out on the platform to load on the truck, and when I rolled the barrel over the platform, it broke or cracked one of the planks in the flooring of the platform. At the time I rolled this barrel over plank and broke or cracked it, it sagged a little, and in a while it was sagging probably a quarter of an inch. At any rate the plank sagged enough that any one could tell that it was broken, that is any one working on the platform looking closely at it. The plank that was broken was a plank near the outside of the platform. I do not know which plank exactly it was that was broken, but it was one near the outside of the platform. At the time I broke this plank, I told Mr. Bacus that he had better report this; that that plank might be broken and some one might step through the hole.''

The testimony also reflected that appellant was seriously and permanently injured as a consequence of the incidents heretofore stated. At the conclusion of the production of testimony, the trial court, at appellee's request, directed the jury to return a verdict in favor of appellees, and this appeal comes from the consequent judgment.

Appellee, L. H. Bacus, was the agent and employee of the appellee Sinclair Refining Company, and as such had the duty of exercising ordinary care in furnishing his employee, appellant Bumpas, a reasonably safe place to perform his services. *Mills* v. *Roberts,* 136 Ark. 433, 206 S. W. 751; *Williams Bros. Inc.* v. *Witt,* 184 Ark. 554, 43 S. W. (2d) 255.

We pretermit any discussion of whether appellant was also an employee of appellee Sinclair Refining Company, for the reason that this question has not been argued in briefs, and we rest our opinion upon the theory hereinafter discussed.

Appellee Sinclair Refining Company owned the warehouse, platform, storage tanks and all the merchandise products which were being distributed in that trade territory by its agent and employee, L. H. Bacus, and thereby expressly invited not only the public but the employees of its agent, Bacus, to come upon and use its premises for the transaction of business with it. Under such circumstances the Sinclair Refining Company owed to appellant the duty of exercising ordinary care to keep its premises in an ordinarily safe condition for ingress or egress in loading and unloading its products. *St. L. I. M. & S. Ry. Co.* v. *Dooley,* 77 Ark. 561, 92 S. W. 789; *Faulkinbury* v. *Shaw,* 183 Ark. 1019, 39 S. W. (2d) 708; 20 R. C. L., § 51, page 55, and cases therein cited.

We understand that appellee tacitly concedes this to be the applicable rule, but insists that appellant knew the condition of the platform and that his continued use thereof was such contributory negligence as to bar his right of recovery. Usually the existence of contributory negligence which will bar a recovery is a question of fact for the jury's consideration and judgment. *Beal Doyle*

*Dry Goods Co.* v. *Carr*, 85 Ark. 479, 108 S. W. 1053. But if the testimony in this regard be such that all reasonable minds much reach the same conclusion, then it resolves itself into a question of law. *Gibson Oil Company* v. *Bush,* 175 Ark. 944, 1 S. W. (2d) 88.

The testimony heretofore quoted shows that appellant knew from four to six weeks prior to his injury that the loading platform contained a weak or probably a broken plank, but the jury might have found from appellant's testimony that he had the right to assume that the owner had exercised the care required of him as such, and that the place had been made reasonably safe. We think this was peculiarly a question for the jury's consideration and judgment.

For the error indicated, the cause is reversed, and remanded for a new trial.