RAGON *v.* DAY.

5-1369                                   306 S. W. 2d 687

Opinion delivered November 11, 1957.

*Hardin, Barton, Hardin & Garner,* for appellant.

*Gordon & Gordon,* for appellee.

J. SEABORN HOLT, Associate Justice. This litigation stemmed from a collision of two passenger automobiles which resulted in personal injury to Alex Day, Sr.'s two

minor sons, Alex, Jr., and Clarence, who were in one of the cars, and the death of James A. Widmer (21 years of age) who was driving the other car. Appellee, as father and next friend of his sons, sued appellant for personal injury damages to Alex, Jr., and Clarence Day, for the loss of their services in their minority, and for car damage. Appellant interposed a general denial, pleaded contributory negligence of appellees, and in a cross-complaint sought damages against appellees. At the conclusion of all the evidence, the trial court directed a verdict against appellant on his cross-complaint. A jury trial resulted in a verdict and judgment for appellee, Alex Day, Sr., in the amount of $995.80, for Clarence Day the sum of $175.00, and for Alex Day, Jr. in the amount of $10,000. This appeal followed.

Some ten witnesses testified for appellees as to the cause of the collision and how it happened, and appellant offered none. The evidence showed that at about 8 o'clock A. M. on October 7, 1956, on a clear day, Alex Day, Jr. (19 years old) was driving his father's car westerly on highway 64 just a short distance out of Conway, Arkansas. Clarence Day (his 17 year old brother) was riding with him. While they were thus traveling toward their home at a speed of about 40 miles per hour and on the right side of the 22-foot concrete pavement, their car was struck in the rear by an on-coming car being driven in the same direction by Widmer. The pavement, at the point where the collision occurred, was a straight-away for about a mile and the point of collision was about mid-way of this straight-away, and there was an un-obstructed view, with no other traffic, for about one-fourth mile in both directions. As indicated, the mishap occurred in the right portion of the highway on which the boys were traveling in the proper traffic lane for their use and while the Day car was in the act of making a right-hand turn off the highway to Day's home. The evidence further shows that Alex Day, Jr., when the Widmer car was about one-fourth mile behind him, began giving a right-hand turn signal, to slow down, and continued to signal until he began making the right-hand turn and had his right front wheel on

the right shoulder of the highway. At this instant it appears that Widmer's car struck him in the rear with such force that the Day car was knocked over and driven for some 125 feet, and the Widmer car, following the impact, traveled some 50 feet. Both cars were almost completely wrecked. Appellee's witness, Tessie Talley, tended to corroborate appellee's testimony. She testified that, "At the time of the collision I was standing at my window on the front of the house. The window faces the highway and I can look and see the highway. I saw this boy with his hand out and up. When I looked again I didn't see anything other than the car sitting there. I did not see the collision. I saw Alex Day, Jr. with his hand up.

'Q. Did you know at the time who it was?

A. Well, at that time I thought it was his mother.' I know the automobile, when I heard the crash I went out my back door and rushed down to where it was and no one was coming either way . . ."

Also, the testimony of State Trooper, Stone, and Sheriff Hawkins as to the physical facts, at the point of the collision, was of a corroborative nature. Appellant offered only the testimony of Widmer's parents who testified as to his age, education, earnings and their mental anguish because of the loss of their son.

For reversal, appellant first contends that the trial court erred in denying him a mis-trial. It appears that after counsel for appellant had introduced a two-page signed statement of appellee, Alex Day, Jr., and while appellee's attorney was questioning him on re-direct examination, the following occurred:

"Q. Did you write this statement out yourself?

A. No, sir.

Q. This statement is dated October 11, 1956. Where were you at that time?

A. I was in the hospital.

Q. St. Anthony's Hospital?

A. Yes, sir.

Q. Were you flat on your back?

A. Yes, sir.

Q. In traction?

A. Yes, sir.

Q. *Do you know who took the statement?*

A. *No, I don't know his name, he said something about being an insurance man* . . . (Italics ours)

MR. GARNER: Your Honor, I ask for a mistrial.

THE COURT: The Jury will be admonished not to consider any reference to insurance or an insurance adjustor, because that has no part in the trial at all. The question is whether or not the plaintiffs and the defendant were or were not guilty of negligence. You will not consider the question of insurance for any purpose.

MR. GARNER: Save our exceptions.''

We hold appellant's contention untenable for two reasons. First, the answer given was not responsive to the question. Certainly it was proper for appellee to know the name of the person who took Day's statement within five days after Day's injury and while he was flat of his back in traction in a hospital, in the absence of Day's attorney. Day's answer, ''No. I don't know his name'' would have fully answered the question asked and the remainder of his answer, ''He said something about being an insurance man,'' was not responsive to the question and purely voluntary information on the part of the witness. In addition, the trial court, by his prompt admonition to the jury, we think, removed any possible prejudicial effect on the jury. In the case of *Malco Theatres, Inc.,* v. *McLain,* 196 Ark. 188, 117 S. W. 2d 45, where the following situation presented itself:

''When the appellee was being examined on her direct examination she was asked to tell exactly how the injury occurred, and what treatment was given, and she

answered: 'And then, on the 14th day of June I went back because it hadn't healed as well as we thought it should heal and the doctor told me then if it didn't do better, why, I would have to wear a brace and go on crutches. And then the insurance company wanted an X-ray, I think——.' Here the witness was interrupted and the appellant objected and moved the court to declare a mistrial. The court said to the jury: 'That is withdrawn from you, gentlemen of the jury. Don't consider that statement as any evidence in this case. It is wholly improper.' " We there said, "The record shows clearly that the attorney for appellee did not ask anything about insurance and that the appellee, in answering the general question, made some statement about the insurance adjuster. She was immediately interrupted, and the court in no uncertain terms told the jury that they could not consider it. If there was any prejudicial effect, what the court said removed it, and there was no error in the court's refusing to grant a mistrial."

What we said in the above case applies with equal force here.

Second, the appellant contends that the court erred in directing a verdict against him on his cross-complaint and in giving instructions five and six. We do not agree to either contention. As we read this record, we are unable to find any substantial testimony (and appellant points to none) that the Day boys were guilty of contributory negligence or any negligence whatever. Such was the effect of the jury's verdict. While the testimony of the two Day boys, since they are interested parties here, will not be taken as undisputed, it was corroborated by other witnesses, Tessie Talley and the two officers, and was ample to support the verdicts. Instructions five and six contained a clear statement of the reciprocal rights and duties, under our statutes, of the drivers of two automobiles on a public highway going in the same direction and we hold were correct. In other instructions the court clearly told the jury, ". . . that if you find from a preponderance of the evidence that at the time and place of the alleged collision, Alex Day, Jr., and Clarence Day, sustained per-

sonal injuries as the proximate result of some act of negligence, upon the part of James A. Widmer, deceased, then if you so find, your verdict should be for the plaintiffs . , . If the jury finds from the evidence heard in the trial of this case, that James A. Widmer, deceased, was not guilty of any act of negligence as alleged proximately causing the alleged personal injuries and damages alleged by the plaintiffs, Alex Day, Sr., Alex Day, Jr., and Clarence Day, then if the jury so finds, your verdict should be for the defendant, Heartsill Ragon, as Administrator of the Estate of James A. Widmer, deceased . . . The question of whether or not, James A. Widmer, deceased, was guilty of some act of negligence as alleged by plaintiffs' in their complaint, proximately causing the alleged personal injuries and property damages complained of by plaintiffs, is a matter and issue for the jury to determine from the evidence heard in the trial of the case as held admissible and all instructions given by the court, all of which should be considered by the jury.''

As indicated, the jury placed the negligence on appellant alone and we hold that the court did not err in dismissing the appellant's cross-complaint in the circumstances. Our rule is that where from the undisputed facts all reasonable minds would reach the conclusion that the injured person acted as an ordinary prudent person under the circumstances and was free of negligence, then it becomes a question of law for the court. *Kansas City So. Ry. Co.* v. *Lewis,* 80 Ark. 396, 97 S. W. 56. In *Cory Bros. & Hannon* v. *Morrison,* 129 Fed. 177, 65 L. R. A. 659, C. C. A. 8th Circuit, an Arkansas case, the Court said: ''The question of contributory negligence, like every question of negligence, is ordinarily for the jury; and it is only when there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, all reasonable men, in the exercise of a fair judgment, would be compelled to reach the same conclusion, that the court may lawfully withdraw it from them.'' And in *Bumpas* v. *Sinclair Refining Co.,* 191 Ark. 571, 87 S. W. 2d 29, it is stated: ''Usually the existence of contributory negligence which will bar a re-

covery is a question of fact for the jury's consideration and judgment. But if the testimony in this regard be such that all reasonable minds must reach the same conclusion, then it resolves itself into a question of law."

But, says appellant, the court should have given an instruction on our comparative negligence statute, Act 191 of 1955 in effect when the present action arose. The answer to this is that the appellant made no such request for such instruction or offered any such instruction.

Finally contention is made that the verdicts were excessive, especially the $10,000 verdict in favor of Alex Day, Jr. We do not agree. Alex's physician testified, in effect, that Alex was confined to a hospital for a total of 26 days and was under his treatment from October 7, 1956 to February 27, 1957, about four months and 20 days, and that total medical and hospital bills amounted to $548.30. This physician testified that Day's injuries consisted of cerebral concussion, a dislocated left shoulder, a dislocation of the 5th cervical vertebra, and a compressed fracture of the 4th and 5th thoracic vertebra. He further testified that Alex would have stiffness, limitation of motion, and some pain in the area of the injury to the neck which will be permanent. Day was in traction for about three weeks which is a painful process. After he was discharged from the hospital he was put in a supportive cast which extended from the waist up, enclosing the body, chest and neck with support to the chin. He was in a cast for six weeks.

There was other evidence that young Day was a student at Philander Smith College in Little Rock, earning $36.00 per month at the Albert Pike Hotel in off hours, that since his injury he has headaches, and that his vision has been weakened making it necessary for him to wear glasses. It appears that young Day has a life expectancy of approximately 48 years. On the measure of damages, the court correctly, told the jury, "If you find from a preponderance of the evidence that the plaintiff, Alex Day, Jr., is entitled to recover in this action for alleged personal injuries, then in de-

222

termining the compensation to be awarded him, if any, you may consider the nature and extent of such injuries, if any, any physical pain and suffering endured or suffered as the result of the injuries, if any, and the duration of same; any mental anguish occurring as the result of such injuries, if any, and any loss of earnings resulting from injuries, if any, and the extent of same, if any loss is found to have been sustained."

While the jury has no definite yardstick by which to measure damages in a case such as this, the amount of an award must largely be left to the judgment of the jurors and unless we can say that the amount of the judgment was induced by prejudice or is so unreasonably excessive as to shock the conscience of the court, we do not disturb it, (*Grandbush* v. *Grimmett*, 227 Ark. 197, 297 S. W. 2d 647). On the evidence here we do not find that any of the verdicts are excessive. Accordingly, the judgment is affirmed.